1  SANDRA R. BROWN
   Acting United States Attorney
2  LAWRENCE S. MIDDLETON
   Assistant United States Attorney
3  Chief, Criminal Division
   JOHN J. LULEJIAN (Cal. Bar No. 186783)
4  Assistant United States Attorney
        1200 United States Courthouse
5       312 North Spring Street
        Los Angeles, California 90012
6       Telephone:  (213) 894-0721
        Facsimile:  (213) 894-0141
7       E-mail:     John.Lulejian@usdoj.gov

8  Attorneys for Plaintiff
   UNITED STATES OF AMERICA

9

10              UNITED STATES DISTRICT COURT

11         FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  IN THE MATTER OF THE          No. MJ 17-3023
    EXTRADITION OF
13                                UNITED STATES' EXTRADITION
    BANI SOLORZANO                 MEMORANDUM
14
    A Fugitive from the           Hearing Date: January 23, 2018
15  Government of Canada.          Hearing Time: 2:00 p.m.
                                   Location:     Courtroom of the
16                                               Honorable Patrick J.
                                                 Walsh
17

18       Plaintiff United States of America, by and through its counsel

19  of record, the United States Attorney for the Central District of

20  California, hereby submits its Extradition Memorandum.

21       The Memorandum is based on all of the documents and exhibits

22  previously lodged and filed under seal and publicly with the Court

23  (in original and redacted forms), which were submitted by the

24  \\

25  \\

26  \\

27  \\

28  \\

Government of Canada in support of its request for extradition in support of extradition in this matter.

Dated: November 29, 2017                Respectfully submitted,

                                        SANDRA R. BROWN
                                        Acting United States Attorney

                                        LAWRENCE S. MIDDLETON
                                        Assistant United States Attorney
                                        Chief, Criminal Division

                                        */s John J. Lulejian*
                                        JOHN J. LULEJIAN
                                        Assistant United States Attorney

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES ............................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ................................ 1

I.   INTRODUCTION .................................................. 1

II.  STATEMENT OF FACTS ........................................... 2

     A.   Factual Background ...................................... 3

          1.   Interview of Victim's Mother ....................... 3

          2.   Interview of the Victim ............................ 4

          3.   Interview of the Victim's Brother .................. 4

          4.   Medical Examination of the Victim .................. 5

          5.   The Fugitive's E-mail .............................. 5

          6.   Identification of the Fugitive ..................... 6

III. LEGAL FRAMEWORK AND ARGUMENT ................................. 6

     A.   Applicable Law Concerning Extradition Hearings .......... 6

          1.   Sui Generis Nature of Extradition Proceedings ...... 6

          2.   General Standards and the Elements of Extradition ... 7

          3.   Probable Cause Determination ....................... 9

          4.   Rules of Criminal Procedure and Evidence Do Not
               Apply ............................................ 10

          5.   Limitations on Fugitive's Evidence ................ 11

          6.   The Rule of Non-Inquiry ........................... 12

     B.   ELEMENTS FOR EXTRADITION ARE MET ....................... 13

          1.   There is Subject Matter Jurisdiction .............. 14

          2.   There is Personal Jurisdiction .................... 14

          3.   Extradition Treaty is in Force .................... 15

          4.   The Fugitive is Sought for Offenses Covered by
               the Treaty ....................................... 15

i

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                                    PAGE

     5.   There Is Probable Cause ........................... 18

       a.   Summary of Facts Supporting Probable Cause .... 19

       b.   Elements of Offense Are Met ................... 20

          (A)   Sexual Interference ...................... 20

          (B)   Invitation of Sexual Touching ........... 20

          (C)   Sexual Assault .......................... 21

       c.   The Individual Appearing Before the Court is the Fugitive .................................. 22

IV.   CONCLUSION ................................................ 22

**TABLE OF AUTHORITIES**

CASES                                                                PAGES

Afanasjev v. Hurlburt,
    418 F.3d 1159 (11th Cir. 2005) ..................... 6, 10, 19

Arnbjornsdottir-Mendler v. United States,
    721 F.2d 679 (9thCir. 1983) ............................. 13

Austin v. Healey,
    5 F.3d 598 (2d Cir. 1993) ............................... 14

Barapind v. Enomoto,
    400 F.3d 744 (9th Cir. 2005) (en banc) ................. 11, 12

Benson v. McMahon,
    127 U.S. 457 (1888) ................................... 6, 18

Bingham v. Bradley,
    241 U.S. 511 (1916) ................................... 9, 10

Bovio v. United States,
    989 F.2d 255 (7th Cir. 1993) ............................. 12

Charlton v. Kelly,
    229 U.S. 447 (1913) ................................... 7, 12

Collins v. Loisel,
    259 U.S. 309 (1922) ................... 9, 10, 12, 16, 18

Cucuzzella v. Keliikoa,
    638 F.2d 105 (9th Cir. 1981) ........................... 9, 16

DeSilva v. DiLeonardi,
    125 F.3d 1110 (7th Cir. 1997) ........................... 12

Eain v. Wilkes,
    641 F.2d 504 (7th Cir. 1981) ............................. 11

Emami v. U.S. Dist. Court for N. Dist.,
    834 F.2d 1444 (9th Cir. 1987) ......................... 10, 11

TABLE OF AUTHORITIES (CONTINUED)

PAGES

Factor v. Laubenheimer,
        290 U.S. 276 (1933) ..................................... 8, 9

Fernandez v. Phillips,
        268 U.S. 311 (1925) ..................................... 9, 19

Gallo-Chamorro v. United States,
        233 F.3d 1298 (11th Cir. 2000) .......................... 16

Glucksman v. Henkel,
        221 U.S. 508 (1911) ..................................... 10, 13

Greci v. Birknes,
        527 F.2d 956 (1st Cir. 1976) ............................ 10

Grin v. Shine,
        187 U.S. 181 (1902) ..................................... 16

Hooker v. Klein,
        573 F.2d 1360 (9th Cir. 1978) .......................... 11, 12

Hoxha v. Levi,
        465 F.3d 554 (3d Cir. 2006) ............................. 17

In re Christensen,
        478 F.2d 1392 (2d Cir. 1973) ............................ 11

In re Extradition of Gonzalez,
        217 F. Supp. 717 (S.D.N.Y. 1963) ....................... 13

In re Extradition of Mainero
        990 F. Supp. 1208 (S.D. Cal. 1997) ...................... 14

In re Extradition of McMullen,
        989 F.2d 603 (2d Cir. 1993) ............................. 10

In re Lincoln,
        228 F. 70 (E.D.N.Y. 1915) ............................... 13

iv

**TABLE OF AUTHORITIES (CONTINUED)**

PAGES

In re Ryan,
      360 F. Supp. 270 (E.D.N.Y. 1973) ........................... 11

Jhirad v. Ferrandina,
      536 F.2d 478 (2d Cir. 1976) ............................... 6

Jimenez v. Aristeguieta,
      311 F.2d 547 (5th Cir. 1962) .............................. 14

Kelly v. Griffin,
      241 U.S. 6 (1916) ......................................... 15

Koskotas v. Roche,
       931 F.2d 169 (1st Cir. 1991) ............................ 10

Lo Duca v. United States,
      93 F.3d 1100 (2d Cir. 1996) ............................... 7

Lopez-Smith v. Hood,
      121 F.3d 1322 (9th Cir. 1997) ............................ 13

Mainero v. Gregg,
      164 F.3d 1199 (9th Cir. 1999) ......................... 10, 11

Manta v. Chertoff,
      518 F.3d 1134 (9th Cir. 2008) .............................8

Martin v. Warden,
      993 F.2d 824 (11th Cir. 1993) ..................... 6, 7, 10

McElvy v. Civiletti,
      523 F. Supp. 42 (S.D. Fla. 1981) .........................16

Melia v. United States,
      667 F.2d 300 (2d Cir. 1981) .............................. 10

Messina v. United States,
      728 F.2d 77 (2d Cir. 1984) ............................... 10

1

**TABLE OF AUTHORITIES (CONTINUED)**

2
PAGES

3 Mirchandani v. United States,

4     836 F.2d 1223 (9th Cir. 1988) ........................... 9, 18

5 Neely v. Henkel,

6     180 U.S. 109 (1901) .................................... 6, 7

7 Ordinola v. Hackman,

8     478 F.3d 588 (4th Cir. 2007) ........................... 8

9 Ornelas v. Ruiz,

10     161 U.S. 502 (1896) .................................... 9

11 Prasoprat v. Benov,

12     421 F.3d 1009 (9th Cir. 2005) ..................... 7, 10, 13

13 Quinn v. Robinson,

14     783 F.2d 776 (9th Cir. 1986) ................. 8, 9, 10, 12

15 Romeo v. Roache,

16     820 F.2d 540 (1st Cir. 1987) ........................... 10

17 Sabatier v. Dabrowski,

18     586 F.2d 866 (1st Cir. 1978) ........................... 10

19 Shapiro v. Ferrandina,

20     478 F.2d 894 (2d Cir. 1973) ....................... 7, 8, 12

21 Sidali v. INS,

22     107 F.3d 191 (3d Cir. 1997) ........................... 19

23 Simmons v. Braun,

24     627 F.2d 635 (2d Cir. 1980) ........................... 10

25 Then v. Melendez,

26     92 F.3d 851 (9th Cir. 1996) ........................... 15

27 United States ex rel. Sakaguchi v. Kaulukukui,

28     520 F.2d 726 (9th Cir. 1975) ........................... 9

<u>TABLE OF AUTHORITIES (CONTINUED)</u>

<u>PAGES</u>

<u>United States v. Lui Kin-Hong</u>,

 110 F.3d 103 (1st Cir. 1997) ........................... 13

<u>United States v. Pena-Bencosme</u>,

 Case No. 05-M-1518, 2007 WL 3231978

 (E.D.N.Y. Oct. 30, 2007) ........................... 12

<u>United States v. Saccoccia</u>,

 58 F.3d 754, 766 (1st Cir. 1995) ........................... 16

<u>United States v. Wiebe</u>,

 733 F.2d 549 (8th Cir. 1984) ........................... 8, 9

<u>Valencia v. Limbs</u>,

 655 F.2d 195 (9th Cir. 1981) ........................... 9

<u>Ward v. Rutherford</u>,

 921 F.2d 286 (D.C. Cir. 1990) ........................... 14

<u>Yapp v. Reno</u>,

 26 F.3d 1562 (11th Cir. 1994) ........................... 10

<u>Zanazanian v. United States</u>,

 729 F.2d 624 (9th Cir. 1984) ........................... 8


<u>STATUTES</u>

18 U.S.C. § 2241(c) ........................... 17, 18

18 U.S.C. § 2244(a)(5) ........................... 17

18 U.S.C. § 3181 ........................... 15

18 U.S.C. § 3184 ........................... *passim*

18 U.S.C. § 3186 ........................... 13

18 U.S.C. § 3190 ........................... 11

Cal. Penal § 261(a) ........................... 17

## TABLE OF AUTHORITIES (CONTINUED)

PAGES

Cal. Penal § 264 ............................................... 17

Cal. Penal § 264(c)(1) ........................................ 18

Cal. Penal § 269 .............................................. 18

Cal. Penal § 269(b) ........................................... 18

Cal. Penal § 288(a) ........................................... 17


TREATIES

Treaty on Extradition Between the United States

    of America and Canada, U.S.-Can., Dec. 3, 1971,

    27 U.S.T. 983 ............................................ 1

Protocol Amending the Extradition Treaty with Canada,

    U.S.-Can., Jan. 11, 1988, S. Treaty Doc.

    No. 101-17 (1990) ....................................... 1

Second Protocol Amending the Extradition Treaty with

    Canada, U.S.-Can., Jan. 12, 2001, S. Treaty Doc.

    No. 107-11 (2002) ....................................... 1

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2  **I.    INTRODUCTION**

3       On October 27, 2017, the United States Marshals Service arrested

4  fugitive BANI SOLORZANO ("the fugitive"), in this district on an

5  arrest warrant issued by United States Magistrate Judge Jean P.

6  Rosenbluth.  (<u>See</u> Docket No. 1.)  The arrest warrant was issued

7  pursuant to a complaint filed by the United States in this District

8  to initiate an extradition proceeding based on the request of the

9  Government of Canada that the fugitive be extradited to stand trial

10 for the crimes of (1) Sexual Interference, in violation of section

11 151 of the Criminal Code of Canada ("CCC"); (2) Invitation to Sexual

12 Touching, in violation of section 152 of the CCC; and (3) Sexual

13 Assault, in violation of section 271 of the CCC.  (<u>See</u> Docket No. 1.)

14 The fugitive's initial court appearance was on October 27, 2017.  At

15 the fugitive's request, the Court scheduled a detention hearing for

16 November 1, 2017, and rescheduled that hearing for November 6, 2017,

17 where the Court held that there were no special circumstances that

18 warranted the fugitive's release, and ordered the fugitive's

19 continued detention.  (<u>See</u> Docket No. 12.)

20      Canada made its formal request for the fugitive's extradition

21 under the authority of the Treaty on Extradition Between the United

22 States of America and Canada, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983;

23 Protocol Amending the Extradition Treaty with Canada, U.S.-Can.,

24 Jan. 11, 1988, S. Treaty Doc. No. 101-17 (1990); and Second Protocol

25 Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 12,

26 2001, S. Treaty Doc. No. 107-11 (2002) (collectively "the Treaty").

27 A copy of the Treaty and the formal extradition request is annexed to

28 the Declaration of Katherine C. Fennell ("Fennell Decl."), which is

attached as Exhibit 1 to the Government's Complaint for Arrest Warrant and Extradition, filed on October 26, 2016 (Docket No. 1).[1] The United States acts in this proceeding in accordance with its treaty obligations to the Canadian government.

By statute, the judicial officer handling the extradition proceeding is required to hold a hearing to consider the evidence of criminality presented by Canada and to determine whether it is "sufficient to sustain the charge under the provisions of the proper treaty or convention."  18 U.S.C. § 3184.  If the judicial officer finds the fugitive extraditable, he or she certifies that finding to the Secretary of State, who decides whether to surrender the fugitive.  Because the law regarding extradition is sui generis, differing substantially from ordinary criminal or civil proceedings, the United States offers this memorandum as a guide to the nature of the extradition hearing and the application of the Treaty to the facts of this case.

II.  STATEMENT OF FACTS

The formal request for extradition summarizes the case's procedural history, the law supporting the extradition request, witness statements, and other evidence.  It also contains the texts

---

[1]  All original exhibits cited to or otherwise referenced herein were previously filed as attachments to the Government's Complaint for Arrest Warrant and Extradition) (Docket No. 1), which was filed on October 26, 2016.  A redacted copy and an amended redacted copy of these documents were filed on November 7, 2017 (Docket No. 13) and November 28, 2017 (Docket No. 21).  As a result, they are not attached to this memorandum but instead are referenced by docket and CM/ECF page number.  Unless otherwise noted, the docket shall be the one associated with the above-captioned case.  The instant request for extradition is based upon all of the documents submitted by Canadian authorities, which have been filed with the Court.

of the applicable Canadian law; a statement regarding the applicable statute of limitations; a Warrant for Arrest from Canada, issued on March 1, 2012, by Justice of the Peace Ian Zaharko in Edmonton, Alberta, Canada; the charging document; a summary of the statements of the victim, other witness, a medical expert, and other documents related to the proceedings, from which the following facts reasonably may be derived:

**A.   Factual Background**

    1.   <u>Interview of Victim's Mother</u>

The victim's mother reported to the police on March 16, 2011, that in June 2010, the victim, who was then 11 years old, and her family began sharing a residence with her aunt's family in Edmonton, Alberta.  (<u>See</u> Docket No. 21 at 71.)  The fugitive, who was 22-years old at the time, was a member of the household.  (<u>See</u> <u>id.</u>)

On March 16, 2011, the victim's mother reported to the police that in October 2010, she and her sister (the victim's aunt) discovered that the fugitive had been sexually assaulting the victim during the previous months.  (<u>See</u> <u>id.</u>)  The victim's mother learned of the assaults when the victim's aunt discovered her niece (the victim) trying to wash bloodstains from her underwear.  (<u>See</u> <u>id.</u>) When her the victim's mother confronted her about the underwear, the victim disclosed that the fugitive had digitally penetrated her vagina, that she had masturbated his penis, and that there had been one incident of vaginal intercourse.  (<u>See</u> <u>id.</u> at 71-72.)  That same day, the victim's mother observed a bloodstain on the fugitive's bedspread.  (<u>See</u> <u>id.</u> at 72.)

On that same day in October 2010, the victim's mother and aunt confronted the fugitive about sexual activity between him and the

1   victim.  (See id.)  The fugitive replied, "I messed up again."  (See

2   id.)

3        The victim's mother delayed reporting the assaults because she

4   was afraid that Child Services would take away her children.  (See

5   id.)  When she learned that this was not the case, the victim's

6   mother reported the incidents to the police.  (See id.)

7            2.    Interview of the Victim

8        In a video- and audio-recorded interview conducted on March 23,

9   2011, the victim reported that on four or five occasions the fugitive

10  took the victim's hand, placed it on his penis and then had her move

11  her hand up and down; he placed his finger in her vagina "a lot" of

12  times; and on one occasion he put his penis in her vagina.  (See id.)

13  The victim was uncertain about the exact dates but said the incidents

14  took place while her family was living with the fugitive's family, in

15  a bedroom that the fugitive shared with his two brothers and the

16  victim's two brothers.  (See id.)

17       The incidents took place when the victim came into the bedroom

18  to play games on the fugitive's iPhone, as the fugitive played video

19  games on the PlayStation kept in the room.  (See id.)  The fugitive

20  would then come onto the bed, ask what she was doing, and touch her

21  sexually.  (See id.)

22            3.    Interview of the Victim's Brother

23       In a video- and audio-recorded interview conducted on March 29,

24  2011, the victim's brother, who was then 14 years old, related that

25  in the fall of 2010, the fugitive admitted he had "fucked up" because

26  of what he did to the victim.  (See id. at 73.)  When the victim's

27  brother asked what the fugitive meant, the fugitive said, "I kinda

28

4

1  raped your sister.  I wish you could punch me for what I did." (See
2  id.)

3          4.   Medical Examination of the Victim

4      On March 28, 2011, a pediatrician conducted a medical
5  examination of the victim and determined that the examination was
6  normal and showed "no evidence of previous penetrating trauma." (See
7  id.)  The pediatrician opined that a normal examination is not
8  inconsistent with sexual abuse.  (See id.)

9          5.   The Fugitive's E-mail

10     On June 15, 2011, the victim's mother forwarded to the police an
11 e-mail she received four days earlier from
12 banisolorzano@rocketmail.com, an e-mail account that she understood
13 that the fugitive used, with the subject line "Please read this."
14 (See id.)  The e-mail included the following passage:

15          [M]y father just told me this morning about you
16      informing the whole family about the incident that happen
17      [sic] last year. I'm not mad at you at all and I know I
18      probably deserve it or I might have not, but I don't want
19      to debate on this so I'll drop it. All I want to know is
20      why? I know i [sic] stuck you in the most delicate spot
21      ever and there are no words that can describe it. Not a day
22      goes by that I don't think about the pain I caused you so
23      deeply, seriously though, bullshit to the side.  I can't
24      make you keep your mouth shut about this because it's your
25      daughter, but I would like to ask you kindly to not talk
26      about it to no one. This only affects you and me more and
27      [the victim]. I have cause [sic] enough damage and now
28      since everyone knows, the pain will grow bigger. I know

what I put you through and I'm really sorry. There are days
when I just get in a mood that no one can stand me and
that's because I'm thinking of the pain I caused you. If
you were the type of person once [sic] can talk to freely I
would, but I see I can't.

(Id.)

      6.   Identification of the Fugitive

On July 26, 2017, a detective from Edmonton Police Service
showed the victim a photograph of the fugitive that the police
obtained from Instagram.  (See id. at 74.)  The victim positively
identified the person in the photograph as her cousin, the fugitive.
(See id.)  A copy of this photograph is included as an exhibit to
Canada's extradition request.  (See id. at 76.)

**III. LEGAL FRAMEWORK AND ARGUMENT**

    **A.**   **Applicable Law Concerning Extradition Hearings**

      1.   Sui Generis Nature of Extradition Proceedings

The extradition hearing prescribed by 18 U.S.C. § 3184 is unique
in nature.  See, e.g., Martin v. Warden, 993 F.2d 824, 828 (11th Cir.
1993); Jhirad v. Ferrandina, 536 F.2d 478, 482 (2d Cir. 1976).  As
described in Jhirad, an extradition hearing is sui generis, with its
structure and process defined by statute and treaty.  Jhirad, 536
F.2d at 482.  An extradition hearing is not a criminal proceeding;
its purpose is to decide the sufficiency of the charge under the
relevant treaty, not guilt or innocence.  Neely v. Henkel, 180 U.S.
109, 123 (1901); Benson v. McMahon, 127 U.S. 457, 463 (1888);
Afanasjev v. Hurlburt, 418 F.3d 1159, 1165 n.11 (11th Cir. 2005).

The limited nature of the hearing has resulted in special
procedural and evidentiary rules that apply.  For example, the person

1   whose extradition is sought is not entitled to the rights available

2   in a criminal trial.  See Neely, 180 U.S. at 122 (rights available to

3   one charged with criminal offense in this country not applicable to

4   offenses committed outside the United States against the laws of

5   another country); accord Charlton v. Kelly, 229 U.S. 447, 461 (1913);

6   Martin, 993 F.2d at 829.  The purpose of an extradition hearing under

7   Section 3184 is not to try the underlying charge; that is for the

8   foreign court.  See Neely, 180 U.S. at 123.

9          2.   General Standards and the Elements of Extradition

10         Extradition is primarily an executive responsibility with a

11  specially defined role for a judicial officer.  That judicial officer

12  is authorized by statute to determine whether to certify to the

13  Secretary of State that the evidence submitted by the country

14  requesting extradition is "sufficient to sustain the charge."  18

15  U.S.C. § 3184.  The Secretary of State, and not the Court, decides

16  whether the fugitive should be surrendered to the requesting country.

17  See 18 U.S.C. §§ 3184, 3186; Prasoprat v. Benov, 421 F.3d 1009, 1012

18  (9th Cir. 2005); Martin, 993 F.2d at 828; Lo Duca v. United States,

19  93 F.3d 1100, 1110 n.10 (2d Cir. 1996).

20         At the extradition hearing, the Court should consider the

21  evidence presented on behalf of the requesting country and determine

22  whether the legal requirements for certification, as defined in the

23  relevant treaty, statutes, and case law, have been established.  If

24  any explanatory evidence is offered by the fugitive (see infra), the

25  Court rules on its admissibility.  Once the evidentiary record is

26  complete, the extradition judge should make findings on each of the

27  elements for certification, including separate findings for each

28  offense as to which extradition is sought.  See Shapiro v.

<u>Ferrandina</u>, 478 F.2d 894 (2d Cir. 1973).  If the extradition magistrate decides that the elements necessary for extradition are present, he or she must issue a certificate of extraditability, which is forwarded to the Department of State for disposition by the Secretary of State.  <u>See</u> 18 U.S.C. § 3184.[2]

In order to issue a certificate of extraditability, the extradition magistrate must find that: (1) the extradition magistrate has jurisdiction to conduct extradition proceedings; (2) the extradition magistrate has jurisdiction over the fugitive; (3) an extradition treaty is in force; (4) the fugitive is being sought for offenses for which the applicable treaty permits extradition; and (5) there is sufficient evidence to establish that the individual appearing in court is the fugitive who is charged and probable cause to believe that the fugitive committed the offense for which extradition is requested.  <u>See</u> <u>Manta v. Chertoff</u>, 518 F.3d 1134, 1140 (9th Cir. 2008); <u>Quinn v. Robinson</u>, 783 F.2d 776, 783, 790 (9th Cir. 1986); <u>Zanazanian v. United States</u>, 729 F.2d 624, 625-26 (9th Cir. 1984).

When interpreting an extradition treaty, the extradition magistrate must construe its provisions liberally, in a manner favoring the obligation to surrender fugitives.  <u>See</u> <u>Factor v. Laubenheimer</u>, 290 U.S. 276, 293-94, 298, 303 (1933); <u>United States v.</u>

---

[2]  If the Court certifies the evidence to the Secretary of State, the Court must commit the fugitive to the custody of the United States Marshal to await further determination by the Secretary regarding surrender to the representatives of the requesting state. <u>See</u> 18 U.S.C. § 3184.  The Court should then forward, or have forwarded, a certified copy of the certification and commitment order to the Secretary of State, together with a copy of any evidence outside the formal extradition package and a transcript of any testimony at the hearing.  <u>See</u> 18 U.S.C. § 3184; <u>Ordinola v. Hackman</u>, 478 F.3d 588, 597 (4th Cir. 2007).

1  _Wiebe_, 733 F.2d 549, 554 (8th Cir. 1984); _Cucuzzella v. Keliikoa_, 638

2  F.2d 105, 107 n.3 (9th Cir. 1981) ("[T]reaties should be construed to

3  enlarge the rights of the parties").  Moreover, the obligation to

4  surrender the fugitive to be tried for her alleged offenses "should

5  be construed more liberally than a criminal statute or the technical

6  requirements of criminal procedure." _Factor_, 290 U.S. at 298.

7  Accordingly, "[f]orm is not to be insisted upon beyond the

8  requirements of safety and justice," _Fernandez v. Phillips_, 268 U.S.

9  311, 312 (1925), and objections that "savor of technicality" do not

10  find favor in court, _Bingham v. Bradley_, 241 U.S. 511, 517-18 (1916).

11             3.   Probable Cause Determination

12       The extradition magistrate is not authorized to determine

13  whether the evidence is sufficient to justify conviction, as that

14  determination will be made by the foreign court that handles the

15  case.  See _Collins v. Loisel_, 259 U.S. 309, 316 (1922); _Quinn_, 783

16  F.2d at 815; _Valencia v. Limbs_, 655 F.2d 195, 198 (9th Cir. 1981).

17  The extradition magistrate need only determine whether there is

18  probable cause to believe that the fugitive committed the offense or

19  offenses for which extradition is sought.  See _Ornelas v. Ruiz_, 161

20  U.S. 502, 512 (1896).

21       In the extradition context, the Ninth Circuit has explicated the

22  probable cause standard as asking "whether there was any evidence

23  warranting the finding that there was a reasonable ground to believe

24  the accused guilty." _Mirchandani v. United States_, 836 F.2d 1223,

25  1226 (9th Cir. 1988) (quoting _Fernandez_, 268 U.S. at 312); _see also_

26  _United States ex rel. Sakaguchi v. Kaulukukui_, 520 F.2d 726, 730-31

27  (9th Cir. 1975) ("magistrate's function is to determine whether there

28  is 'any' evidence sufficient to establish reasonable or probable

1  cause").  As to the form of the evidence, extradition is proper where

2  the standard is met if the proof "is presented[], even in somewhat

3  untechnical form according to our ideas."  Glucksman v. Henkel, 221

4  U.S. 508, 512 (1911) (affirming extradition despite minor or

5  technical objections).

6        4.    Rules of Criminal Procedure and Evidence Do Not Apply

7        The Federal Rules of Criminal Procedure do not apply to

8  extradition proceedings.  Rule 1(a)(5) states that the rules are not

9  applicable to the "extradition and rendition of a fugitive."  The

10 Federal Rules of Evidence are also inapplicable.[3]  An example of the

11 difference between a criminal trial and an extradition proceeding is

12 that, in the latter, hearsay is permitted.  See Collins, 259 U.S. at

13 317; Mainero v. Gregg, 164 F.3d 1199, 1206 (9th Cir. 1999) ("it is

14 well settled in this circuit that evidence [in an extradition

15 proceeding] is not incompetent simply because it is hearsay"),

16 superseded by statute on other grounds, Pub. L. No. 105-277, § 2242,

17 1999 U.S.C.C.A.N. (112 Stat. 2681); Emami v. U.S. Dist. Court for

18

19 _____

20     [3]  Rule 1101(d)(3) provides: "The rules (other than with respect
   to privileges) do not apply . . . [to] proceedings for extradition or
   rendition."  See also Afanasjev, 418 F.3d at 1164-65; Melia v. United
21 States, 667 F.2d 300 (2d Cir. 1981); Greci v. Birknes, 527 F.2d 956
   (1st Cir. 1976).  Moreover, the fugitive has no right to discovery,
22 Prasoprat, 421 F.3d at 1014; Koskotas v. Roche, 931 F.2d 169, 175
   (1st Cir. 1991); Messina v. United States, 728 F.2d 77, 80 (2d Cir.
23 1984); there is no Sixth Amendment right to a speedy trial, Yapp v.
   Reno, 26 F.3d 1562, 1565 (11th Cir. 1994); Martin, 993 F.2d at 829;
24 Sabatier v. Dabrowski, 586 F.2d 866, 869 (1st Cir. 1978); the Fifth
   Amendment guarantee against double jeopardy does not apply to
25 successive extradition proceedings, Collins, 262 U.S. at 429; In re
   Extradition of McMullen, 989 F.2d 603, 612-13 (2d Cir. 1993); the
26 exclusionary rule is not applicable, Romeo v. Roache, 820 F.2d 540,
   545 (1st Cir. 1987); Simmons v. Braun, 627 F.2d 635, 636-37 (2d Cir.
27 1980); and the fugitive does not have the right to confront witnesses
   whose written statements are used against him, Bingham, 241 U.S. at
28 517.

                                    10

1  N. Dist., 834 F.2d 1444, 1451 (9th Cir. 1987) ("In the Ninth Circuit

2  it has been repeatedly held that hearsay evidence that would be

3  inadmissible for other purposes is admissible in extradition").[4]

4       Further, the calling of live witnesses is not contemplated at

5  extradition proceedings.  "An extradition proceeding is not a trial.

6  Indeed, the very purpose of extradition treaties is to obviate the

7  necessity of confronting the accused with the witnesses against him."

8  Mainero, 164 F.3d at 1207 (internal quotations and citation omitted);

9  see also Quinn, 783 F.2d at 815-16 ("[b]arring hearsay from

10 extradition proceedings would thwart one of the objectives of

11 bilateral extradition treaties").

12           5.   Limitations on Fugitive's Evidence

13      The fugitive's grounds for opposing an extradition request are

14 limited.  A fugitive may not introduce evidence that contradicts the

15 evidence submitted by the requesting country "[b]ecause extradition

16 courts do not weigh conflicting evidence in making their probable

17 cause determinations."  Barapind v. Enomoto, 400 F.3d 744, 749 (9th

18 Cir. 2005) (en banc) (internal quotation marks and citation omitted).

19 In other words, the fugitive cannot offer evidence that would lead to

20 an evidentiary dispute.  See Hooker v. Klein, 573 F.2d 1360, 1368

21 (9th Cir. 1978); Barapind, 400 F.3d at 749-50.  That is necessarily

22 so because the introduction of such evidence "would convert the

23 extradition into a full-scale trial, which it is not to be."  Eain v.

24 

---

25      [4] Indeed, "[a] determination of probable cause in an extradition
   proceeding may rest entirely upon hearsay."  In re Ryan, 360 F. Supp.
26 270, 273 (E.D.N.Y. 1973), aff'd sub nom. In re Christensen, 478 F.2d
   1392 (2d Cir. 1973).  Documents offered in evidence at an extradition
27 hearing are admissible if they are certified by the principal
   diplomatic or consular officer of the United States resident in the
28 country requesting extradition, 18 U.S.C. § 3190, which is the case
   here.

                                    11

1    _Wilkes_, 641 F.2d 504, 511 (7th Cir. 1981); _see also_ _Hooker_, 573 F.2d

2    at 1368 (a person fighting extradition is "not permitted to introduce

3    evidence on the issue of guilt or innocence").  A fugitive may

4    therefore only introduce evidence explaining the evidence submitted

5    in support of the extradition request.  _See_ _Barapind_, 400 F.3d at

6    749.  Hence, the extradition magistrate does not weigh conflicting

7    evidence and determine what to credit, "but, rather, determines only

8    whether there is competent evidence to support the belief that the

9    accused has committed the charged offense." _Quinn_, 783 F.2d at 815.

10        It is also well settled that affirmative defenses to the merits

11   of the charge are not to be entertained in extradition hearings.  _See_

12   _Charlton_, 229 U.S. at 462; _Collins_, 259 U.S. at 316-17; _Hooker_, 573

13   F.2d at 1368; _DeSilva v. DiLeonardi_, 125 F.3d 1110, 1112 (7th Cir.

14   1997).  A fugitive may not introduce evidence that (1) merely

15   conflicts with the evidence submitted on behalf of the demanding

16   state, _Collins_, 259 U.S. at 315-17; (2) attempts to establish an

17   alibi, _Shapiro_, 478 F.2d at 901; (3) suggests an insanity defense,

18   _Charlton_, 229 U.S. at 462; (4) seeks to impeach the credibility of

19   the demanding country's witnesses, _Bovio v. United States_, 989 F.2d

20   255, 259 (7th Cir. 1993); or (5) seeks to establish a self-defense

21   argument, _United States v. Pena-Bencosme_, Case No. 05-M-1518, 2007 WL

22   3231978, at *7 (E.D.N.Y. Oct. 30, 2007).  These issues, which require

23   factual and credibility determinations, are for the court in the

24   requesting country to resolve at a trial of the charges.

25             6.   The Rule of Non-Inquiry

26        All matters raised by the fugitive as a defense to extradition,

27   other than those related to the requirements for certification, are

28   to be considered by the Secretary of State, not by the Court.  _See_

18 U.S.C. §§ 3184 & 3186. For example, the Court should not look behind the extradition request into the motives of the requesting country. As stated in In re Lincoln, 228 F. 70, 74 (E.D.N.Y. 1915):

> [I]t is not a part of the court proceedings nor of the hearing upon the charge of crime to exercise discretion as to whether the criminal charge is a cloak for political action, nor whether the request is made in good faith. Such matters should be left to the Department of State.

Accord Quinn, 783 F.2d at 789; see also In re Extradition of Gonzalez, 217 F. Supp. 717, 722 n.15 (S.D.N.Y. 1963) (18 U.S.C. § 3184 gives court no authority to inquire into such matters).

In addition, the Court should not investigate the fairness of the requesting country's justice system. United States v. Lui Kin-Hong, 110 F.3d 103, 110 (1st Cir. 1997). It is the role of the Secretary of State, not judicial officers, to determine whether extradition should be denied on humanitarian grounds or on account of the treatment the fugitive will likely receive on return to the requesting country. Prasoprat, 421 F.3d at 1016.[5]

**B.   ELEMENTS FOR EXTRADITION ARE MET**

In the instant case, the elements necessary for the Court to certify the fugitive's eligibility for extradition have been met. There is subject matter and personal jurisdiction over the fugitive.

---

[5] See also Lopez-Smith v. Hood, 121 F.3d 1322, 1327 (9th Cir. 1997) (courts generally refrain from examining penal systems of requesting nations); Arnbjornsdottir-Mendler v. United States, 721 F.2d 679, 683 (9th Cir. 1983) ("The rationale is that such matters are to be determined solely by the executive branch"), superseded by statute on other grounds, Pub. L. No. 105-277, § 2242, 1999 U.S.C.C.A.N. (112 Stat. 2681). As Justice Holmes said, "[w]e are bound by the existence of an extradition treaty to assume that the trial will be fair." Glucksman, 221 U.S. at 512.

1    A valid extradition treaty permits extradition for the offense

2    charged in Canada.  And there is probable cause to believe that the

3    fugitive committed that offense.

4              1.    There is Subject Matter Jurisdiction

5       The extradition statute authorizes proceedings to be conducted

6    by "any justice or judge of the United States, or any magistrate

7    authorized so to do by a court of the United States, or any judge of

8    a court of record of general jurisdiction of any State."  18 U.S.C.

9    § 3184.  Consequently, both magistrate judges and district judges may

10    render a "certification" under Section 3184.  See Austin v. Healey, 5

11    F.3d 598, 601-02 (2d Cir. 1993) (magistrate had authorization to

12    conduct extradition hearing without specific delegation of

13    authority); Ward v. Rutherford, 921 F.2d 286, 287 (D.C. Cir. 1990)

14    (both statute and local rule made plain magistrate's authority to

15    conduct extradition hearing); Jimenez v. Aristeguieta, 311 F.2d 547,

16    553-55 (5th Cir. 1962) (any judicial officer in class authorized by

17    statute may conduct extradition hearing).  Here, General Order 05-07

18    of the United States District Court for the Central District of

19    California also delegates to magistrate judges the authority to

20    handle extradition matters.  Accordingly, this Court is authorized to

21    conduct this extradition proceeding.

22              2.    There is Personal Jurisdiction

23       A United States Magistrate Judge in the Central District of

24    California has jurisdiction over the fugitive because he was "found"

25    in this district when he was arrested on the extradition warrant at

26    the Theo Lacey Detention Facility in Orange, California, which is in

27    this district, on or about October 27, 2016.  See In re Extradition

28    of Mainero, 990 F. Supp. 1208, 1216 (S.D. Cal. 1997).  When the

1   fugitive is "found within [this] jurisdiction," the personal

2   jurisdictional requirement of 18 U.S.C. § 3184 is met.

3          3.   Extradition Treaty is in Force

4          There is an extradition treaty in full force and effect between

5   the United States and Canada.  See 18 U.S.C. § 3181 (Historical and

6   Statutory Notes); see also Docket Nos. 1, Ex. 1 & 21 at 12-55

7   (Fennell Decl.).   The State Department's conclusion that the Treaty

8   is in full force and effect, as expressed in the Fennell Declaration,

9   is entitled to deference.  See Then v. Melendez, 92 F.3d 851, 853

10  (9th Cir. 1996); Mainero, 990 F. Supp. at 1216.

11         4.   The Fugitive is Sought for Offenses

12              Covered by the Treaty

13         Extradition treaties create an obligation for the United States

14  to surrender fugitives under the circumstances defined in the treaty.

15  Article 1 of the treaty applicable in this case provides for the

16  return of fugitives charged with or convicted of offenses covered by

17  Article 2, which, in turn, defines offenses as extraditable if the

18  criminal conduct is punished under the laws of both the United States

19  and Canada by imprisonment or other form of detention for a term

20  exceeding one year or any greater punishment.  Consequently, the

21  Court should examine the description of criminal conduct provided by

22  Canada in support of its request and decide whether that conduct

23  would have been criminal under U.S. law, if committed in this

24  country.  A requesting country is not obliged to produce evidence on

25  all elements of a criminal offense nor to establish that its crimes

26  are identical to ours.  See Kelly v. Griffin, 241 U.S. 6, 15 (1916).

27

28

1    The Supreme Court noted in <u>Collins v. Loisel</u>, 259 U.S. 309

2  (1922), that dual criminality is not a technical concept involving a

3  comparison of elements of the two countries' offenses:

4         The law does not require that the name by which the crime

5         is described in the two countries shall be the same; nor

6         that the scope of the liability shall be coextensive, or,

7         in other respects, the same in the two countries.  It is

8         enough if the particular act charged is criminal in both

9         jurisdictions.

10  259 U.S. at 312; <u>accord</u> <u>Gallo-Chamorro v. United States</u>, 233 F.3d

11  1298, 1307 (11th Cir. 2000), <u>cert. denied</u>, 516 U.S. 811 (1995);

12  <u>United States v. Saccoccia</u>, 58 F.3d 754, 766 (1st Cir. 1995), <u>cert.</u>

13  <u>denied</u>, 517 U.S. 1105 (1996).

14     Dual criminality is established if the conduct involved in the

15  foreign offense would be criminal under either United States federal

16  law, the law of the state in which the hearing is held, or the law of

17  a preponderance of the states.  <u>See</u> <u>Cucuzzella v. Keliikoa</u>, 638 F.2d

18  105, 107-08 (9th Cir. 1981).  The Court should "approach challenges

19  to extradition with a view toward finding the offense within the

20  treaty," <u>McElvy v. Civiletti</u>, 523 F. Supp. 42, 48 (S.D. Fla. 1981),

21  "because extradition treaties should be interpreted with a view to

22  fulfil our just obligations to other powers."  <u>Grin v. Shine</u>, 187

23  U.S. 181, 184 (1902).  Foreign governments should not be expected to

24  be versed in our criminal laws and procedures.  <u>Id.</u> at 184-85.

25     Here, the dual criminality requirement is met because the crimes

26  for which the fugitive is charged are punishable in both Canada and

27  the United States for a period of more than one year.

28

16

In Canada, the maximum penalty for the crime of Sexual Interference, in violation of section 151 of the CCC, is 10 years of imprisonment.  (See Docket No. 21 at 62 n.1.)  The conduct underlying that charge would be punishable, if it had been committed here, as Lewd or Lascivious Acts, in violation of Section 288(a) of the California Penal Code, which carries a maximum penalty of eight years of imprisonment; and/or as Aggravated Sexual Abuse, in violation of Title 18, United States Code, Section 2241(c), which carries a maximum penalty of life imprisonment.

In Canada, the maximum penalty for the crime of Invitation to Sexual Touching, in violation of section 152 of the CCC, is 10 years of imprisonment.  (See Docket No. 21 at 64.)  The conduct underlying that charge would be punishable, if it had been committed here, as Lewd or Lascivious Acts, in violation of Section 288(a) of the California Penal Code, which carries a maximum penalty of eight years of imprisonment; and/or as Abusive Sexual Contact, in violation of Title 18, United States Code, Section 2244(a)(5), which carries a maximum penalty of life imprisonment.

Finally, in Canada, the maximum penalty for the crime of Sexual Assault, in violation of section 271 of the CCC, is 10 years of imprisonment.  (See Docket No. 21 at 64.)  The conduct underlying that charge would be punishable, if it had been committed here, as Rape, in violation of Sections 261(a) and 264 of the California Penal Code; Aggravated Sexual Assault of a Child, in violation of Section 269 of the California Penal Code; and/or Aggravated Sexual Abuse, in violation of Title 18, United States Code, Section 2241(c). Given the age of the victim, the maximum penalties would be 13 years of imprisonment (Rape) or life imprisonment (Aggravated Sexual

1  Assault of a Child and Aggravated Sexual Abuse).  See Cal. Penal Code

2  §§ 264(c)(1), 269(b); 18 U.S.C. § 2241(c).

3       Thus, the offenses for which the fugitive is sought are within

4  the scope of the Treaty.

5            5.    There is Probable Cause

6       The standard of proof to find the evidence "sufficient to

7  sustain the charge . . ." pursuant to Section 3184 is the familiar

8  domestic requirement of probable cause.  The Court must conclude that

9  there is probable cause to believe that the crime charged by Canada

10  was committed and the person before the Court committed it.  See

11  Hoxha v. Levi, 465 F.3d 554, 561 (3d Cir. 2006).  The evidence is

12  sufficient, and probable cause is established, if "there was any

13  evidence warranting the finding that there was a reasonable ground to

14  believe the accused guilty."  Mirchandani, 836 F.2d at 1226.  The

15  Supreme Court stated in Benson, 127 U.S. at 463:

16       the proceeding before the commissioner is not to be regarded

17       as in the nature of a final trial by which the prisoner

18       could be convicted or acquitted of the crime charged against

19       him, but rather of the character of those preliminary

20       examinations which take place every day in this country

21       before an examining or committing magistrate for the purpose

22       of determining whether a case is made out which will justify

23       the holding of the accused, either by imprisonment or under

24       bail, to ultimately answer to an indictment, or other

25       proceeding, in which he shall be finally tried upon the

26       charge made against him.

27  See also Collins, 259 U.S. at 316 ("The function of the

28  committing magistrate is to determine whether there is competent

1  evidence to justify holding the accused to await trial, and not

2  to determine whether the evidence is sufficient to justify a

3  conviction."); Fernandez, 268 U.S. at 312 ("Competent evidence to

4  establish reasonable grounds is not necessarily evidence

5  competent to convict."); accord Afanasjev, 418 F.3d at 1165 n.11;

6  Barapind, 400 F.3d at 752; Sidali v. INS, 107 F.3d 191, 199 (3d

7  Cir. 1997).

8      Here, the facts summarized above and set forth in the

9  extradition request submitted by Canada establish probable cause.

10          a.   *Summary of Facts Supporting Probable Cause*

11      The United States relies on the totality of the evidence

12  provided by the Canadian authorities, which supports the arrest

13  warrant for the charged offense.  That evidence is detailed above.

14  However, a brief summary of the salient details is set forth below.

15      First, the victim's mother described to the police how she

16  learned that her nephew had sexually abused and assaulted her

17  daughter.  (See Docket No. 21 at 71-72.)  She also told the police

18  that when confronted about the illicit sexual activity with the

19  victim, the fugitive stated, "I messed up again."  (See id. at 72.)

20      Second, the victim described to the police how the fugitive

21  repeatedly sexually abused her, that he made her masturbate him, and

22  that the fugitive raped her.  (See id.)

23      Third, the victim's brother related to the police how the

24  fugitive had confessed to raping the 11-year old victim.  (See id.

25  at 73.)

26      Fourth, a medical examination of the victim did not rule out

27  sexual abuse.  (See id.)

28

Fifth, the fugitive sent an e-mail to his family in which he acknowledged that painful effect that his actions had on the victim and her family.  (See id.)

Sixth, the victim positively identified her abuser, the fugitive, from a photograph.  (See id. at 75.)

> b.   *Elements of Offense Are Met*

The documents provided by Canada establish that the fugitive committed the charged crimes.

> (A)   Sexual Interference

To prove the crime of Sexual Interference, the Canadian prosecution must establish (i) a touching (direct or indirect) of the complainant's body with a part of the accused's body or an object; (ii) for a sexual purpose; and (iii) when the complainant was under sixteen years of age.  (See id. at 63.)

The extradition request contains a summary of the statements of the victim and the victim's mother that establish that the fugitive repeatedly used his finger to penetrate the victim's vagina.  (See id. at 71-72.)  The victim told the police that the fugitive touched her sexually.  (See id. at 72.)  Further, the extradition request states that the victim was 11 years old when the fugitive sexually abused and assaulted her.  (See id. at 66, 71, 73.)

Accordingly, there is probable cause that the elements are met for purposes of certifying extraditability for this charge.

> (B)   Invitation of Sexual Touching

To prove this crime, the Canadian prosecution must establish (1) that the accused invited the complainant to touch the body of the accused of any other person (including the complainant); (ii) that the accused invited the complainant to use a part of the

1  complainant's body, or an object to accomplish this touching; (iii)

2  that the invitation was for a sexual purpose; and (iv) that the

3  complainant was under age sixteen at the time of the offence. (See

4  id. at 64.)

5      The extradition request contains a summary of the statements of

6  the victim and the victim's mother that the fugitive took the

7  victim's hand, placed it on his penis, and had her move her hand up

8  and down. (See id. at 71-72.)  There is no other reason than for a

9  sexual purpose for the fugitive's actions.  Also, the extradition

10 request states that the victim was 11-years old when the fugitive

11 sexually abused and assaulted her. (See id. at 66, 71, 73.)

12     Accordingly, there is probable cause that the elements are met

13 for purposes of certifying extraditability for this charge.

14                    (C)   Sexual Assault

15     To prove this crime, the Canadian prosecution must establish

16 (i) an intentional application of force (including any degree of

17 touching); (ii) without consent; (iii) in circumstances such that the

18 sexual integrity of the victim was violated. (See id. at 65.)

19     The extradition request contains a summary of the statements of

20 the victim and the victim's mother that the fugitive put his penis

21 inside the victim's vagina. (See id. at 71-72.)  It is implied that

22 such conduct required the intentional application of force.  In fact,

23 the fugitive described what he did to the victim as "rape." (See id.

24 at 73.)  Because the age of consent in Canada is 16 years of age, and

25 the victim was 11 years old at the relevant time, she could not have

26 consented. (See id.)  Finally, by placing his penis in the victim's

27 vagina, the fugitive violated the victim's sexual integrity.

28

Accordingly, there is probable cause that the elements are met for purposes of certifying extraditability for this charge.

      *c.* *The Individual Appearing Before the Court is the Fugitive*

The person before this Court is the person named in the Canadian arrest warrant for these offenses.  The fugitive admitted his true name as charged as an alias at his initial appearance on October 27, 2017, before Chief Magistrate Judge Walsh.  (See Docket No. 8.)  He never has denied that he is the person named in the extradition request.  Moreover, counsel for the fugitive did not contest the identity of the fugitive as being the person charged.  In addition, the photograph of the fugitive, which the victim identified, strongly resembles the person who has appeared before the Court.

## IV.  CONCLUSION

For the foregoing reasons, the United States requests the certification of fugitive BANI SOLORZANO's extraditability to Canada on all of the offenses for which his extradition has been sought.